# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:**<br><br>**James Hurd Scott,**<br><br>                              **Debtor.** | **Bankruptcy Case No. 18-00164-JMM** |
| **Bryan Herrera and Kristina Herrera,**<br><br>                              **Plaintiffs,**<br>**vs.**<br><br>**James Hurd Scott,**<br><br>                              **Defendant.** | **Adv. Proceeding No.18-06007-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

Terri Pickens Manweiler, PICKENS COZAKOS, PA, Boise, Idaho, Attorney for Plaintiffs Bryan and Kristina Herrera.

James Hurd Scott, Eagle, Idaho, Pro Se Defendant.

### *Introduction*

Before the Court is a summary judgment motion filed by Bryan and Kristina

Herrera ("Plaintiffs"). Dkt. No. 7. Chapter 7 debtor James H. Scott ("Defendant")

MEMORANDUM OF DECISION − 1

opposes the motion.[1]  Dkt. No. 9.  The Defendant is the debtor in Case No. 18–00164–

JMM filed February 14, 2018.  Dkt. No. 7.  On April 20, 2018, Plaintiffs filed a motion

for summary judgment, along with a statement of undisputed facts, supporting affidavits,

and a memorandum.  Dkt. No. 7.  Defendant, appearing pro se, filed a response to

Plaintiffs' motion for summary judgment and a response to Plaintiffs' statement of

undisputed facts.  Dkt. Nos. 9, 12.  He also filed supporting affidavits and exhibits.  Dkt.

Nos. 10, 11, 13.  Thereafter, Plaintiffs replied to Defendant's response and filed a motion

to strike, affidavits, a request for judicial notice, and a motion to seal.  Dkt. Nos. 14, 15,

16, 17.

### *Undisputed Facts*

Beginning in 2013, Plaintiffs and Defendant lived in the Colony Subdivision in

Eagle, Idaho as neighbors.  Herrera Aff., Dkt. No. 7–3 at ¶ 2.  In Spring 2016, the

relationship between the parties started to deteriorate due to an ongoing conflict over

Plaintiffs' adherence to Colony Subdivision's Covenants, Codes, and Restrictions

(CC&Rs).  Dkt. No. 15, Ex. A.  This conflict intensified throughout 2016, leading

Defendant to file a complaint against Bryan Herrera in Ada County District Court on

December 22, 2016.[2]  Manweiler Aff., Dkt. No. 7–2 at ¶ 2.  Defendant amended his

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86.

[2] *Jim Scott v. Bryan Herrera*, CV01–16–23111 (Idaho 4th Judicial District 2017).  Defendant failed to seek any relief or state any causes of action in his initial complaint.

MEMORANDUM OF DECISION – 2

complaint on February 21, 2017, adding Kristina Herrera as a defendant in the District

Court case and seeking injunctive relief and damages for defamation per se from

Plaintiffs. *Id.* at ¶ 3. Defendant amended his complaint a second time on June 7, 2017

seeking damages for declaration violations. *Id.* at ¶ 4. On that same day, Plaintiffs filed

a counterclaim that included causes of action for breach of quiet enjoyment, injunctive

relief, intrusion on privacy, and abuse of process. *Id.* at ¶ 5, Ex. A.

Defendant's causes of action for injunctive relief and defamation per se were

dismissed through summary judgment on August 1, 2017. *Id.* at ¶ 6. After a court trial

on September 22, 2017, Defendant's remaining claims were dismissed. *Id.* at ¶ 12. After

a trial held in the District Court on September 18–20, 2017, the jury was given the

following instructions with respect to Plaintiffs' abuse of process claim:

> Instruction No. 11: On Counterclaim 4 for abuse of process, the Herreras
> have the burden of proof on each of the following propositions:
> 1. An ulterior, improper purpose of Jim Scott; and
> 2. That Jim Scott committed a willful act in the use of legal process
>    not proper in the regular course of the proceeding; and
> 3. That the Herreras were damaged and the amount of damages.
>
> If you find from your consideration of all the evidence that each of these
> propositions has been proved, then your verdict should be for the Herreras;
> but if you find from your consideration of all the evidence that any of these
> propositions has not been proved, then your verdict should be for Jim Scott.
>
> Instruction No. 12: The ulterior motive or purpose generally required in an
> abuse of process action may take the form of coercion to obtain a collateral
> advantage not properly involved in the proceeding itself, such as the
> surrender of property or the payment of money, by use of the process as a
> threat or club. *Id.* at ¶¶ 9–10, Ex. B.

MEMORANDUM OF DECISION − 3

At the conclusion of trial, the jury returned a verdict awarding Plaintiffs $150,000 in general damages for the abuse of process claim and $50,000 in general damages for the breach of quiet enjoyment claim.[3]  *Id.* at ¶ 11, Ex. C.  Defendant filed a motion for judgment notwithstanding the verdict on September 21, 2017, and a motion for a new trial on October 10, 2017.  *Id.* at ¶¶ 14–15.  On October 31, 2017, District Court Judge Norton denied both of these motions.  *Id.* at ¶ 16, Ex. D.  On that same day, the court entered judgment in the amount of $200,000 on behalf of Plaintiffs.  *Id.* at ¶ 17, Ex. E. On January 26, 2018, an amended judgment of $228,691.89 was entered for Plaintiffs that included attorney fees and costs.  *Id.* at ¶ 18, Ex. F.  Plaintiffs have not collected any of the judgment amount from Defendant.  Herrera Aff., Dkt. No 7–2.  On February 14, 2018, Defendant petitioned this Court for Chapter 7 bankruptcy protection, listing Plaintiffs as creditors.  *In re Scott,* Case No. 18–06007–JMM, Dkt. No. 1.

On March 1, 2018, Plaintiffs commenced this adversary proceeding against Defendant seeking a determination of nondischargeability of the $150,000 abuse of process judgment under § 523(a)(6).  Dkt. No. 1.  The Court heard oral argument on the matter on May 30, 2018, and thereafter took the motion under advisement.  Fed. R. Bankr. P. 7052; 9014.

---

[3] Plaintiffs dismissed their claim for injunctive relief in July 2017 when it became moot.  Plaintiffs did not prevail on their claim for intrusion of privacy.

MEMORANDUM OF DECISION − 4

### *Summary Judgment Standard*

The standards guiding the Court in considering a motion for summary judgment are well-settled.  Summary judgment is properly granted when no genuine and disputed issues of material fact exist, and, when viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law.  Civil Rule 56, incorporated by Rule 7056; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001).

Further, the Court does not weigh the evidence in considering summary judgment. It determines only whether a material factual dispute remains for trial.  *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997).  An issue is "genuine" if there is sufficient evidence for a reasonable finder of fact to find in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case.  *Far Out Prods.*, 247 F.3d at 992 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986)).  The substantive law will identify which facts are material.  *Anderson,* 477 U.S. at 248.

The initial burden of showing there is no genuine issue of material fact rests on the moving party.  *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998)).  If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment.  *Id*. (citing *Celotex,* 477 U.S. at 322–23).

MEMORANDUM OF DECISION – 5

*Analysis and Disposition*

A.    *Motion to Strike*

Before the Court can consider the Motion for Summary Judgment, it must first resolve Plaintiffs' Motion to Strike. Plaintiff moved to strike paragraphs 4–7 of Pamela Scott's affidavit, Dkt No. 11, and paragraphs 5, 9, 10, and 12 of Defendant's affidavit, Dkt. No. 10, because, Plaintiffs argue, they contain statements for which the affiants lack personal knowledge, are inadmissible hearsay, or are legal conclusions.  Dkt. No. 14 at 2–4.

Civil Rule 56(c)(4), made applicable by Rule 7056, provides: "An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Hearsay is generally inadmissible as evidence.  Fed. R. Evid. 802.  Federal Rule of Evidence 801(c) explains that hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Statements of opposing parties offered in their individual capacities are not hearsay. Fed. R. Evid. 801(d)(2)(a).  When referring to documents, litigants must supply "an original writing to prove its content unless [the Federal Rules of Evidence] or a federal statute provides otherwise."  Fed. R. Evid. 1002.

In their motion, Plaintiffs moved to strike paragraph 4 of Pamela Scott's affidavit and paragraph 5 of Defendant's affidavit because they included inadmissible hearsay

MEMORANDUM OF DECISION – 6

statements. Dkt. No. 14 at 2–4. Each of these paragraphs recall the same statement allegedly made by the Plaintiff at a homeowners' association meeting that took place in Winter 2016/2017. Dkt. No. 14 at 2–4. The statements in these paragraphs are not hearsay because they were made by a Plaintiff, Bryan Herrera, who is an opposing party in this proceeding. The statements are not hearsay and are admissible.

Next, Plaintiffs move to strike paragraphs 5–7 of Pamela Scott's affidavit because Ms. Scott lacked the personal knowledge necessary to make the statements in those paragraphs. Dkt. No. 14 at 2–4. In paragraphs 5–7, Ms. Scott offers statements "on information and belief" about the square footage of the Herrera's old and new homes, but does not provide any evidence to support her assertions, nor does she explain how she obtained this information or why she is qualified to testify to these facts. Dkt. No. 11. Since Ms. Scott's statements in paragraphs 5–7 are not based on personal knowledge, they are properly stricken and the Court will not consider them in resolving the motion for summary judgment before it. *Idaho Conservation League v. Atlanta Gold Corp.*, 844 F.Supp. 1116, 1124 (D. Idaho 2012) ("When a motion to strike challenges the admissibility of an affidavit or declaration, the Court must disregard only those portions of the submission which are inadequate pursuant to the rules.").

Plaintiffs also moved to strike paragraphs 9 and 12 of Defendant's affidavit on the grounds that those paragraphs included inadmissible hearsay. Dkt. No. 14 at 2–4. These paragraphs refer to separate statements made by Plaintiffs' attorney and a witness in previous court proceedings. Dkt. No. 10. Each of these statements were made outside of

MEMORANDUM OF DECISION – 7

the current judicial proceeding, are offered as proof of the matters asserted therein, and do not meet any of the exceptions to the hearsay rule. Therefore, the Defendant's statements in paragraphs 9 and 12 are inadmissible hearsay, must be stricken, and the Court will not consider them in resolving this motion for summary judgment. *Idaho Conservation League*, 844 F.Supp. at 1124.

Lastly, Plaintiffs moved to strike paragraph 10 of the Defendant's affidavit because it contained ultimate legal conclusions. Dkt. No. 14 at 2–4. While paragraph 10 does not include ultimate legal conclusions, it does refer to the contents of a written order of another court. Dkt. No. 10. The Defendant must provide the original writing in order to prove its contents. However, here, the Defendant separately provided a copy of the district court judge's *Order Denying Motion for Reconsideration and Granting in Part Attorney Fees*, Dkt. No. 13, which is the best evidence of the statements in paragraph 10 of Mr. Scott's affidavit. As such, the admissibility of paragraph 10 is moot.

Accordingly, Plaintiffs' motion to strike is granted as to paragraphs 5–7 of Ms. Scott's affidavit and paragraphs 9 and 12 of Defendant's affidavit; denied as to paragraph 4 of Ms. Scott's affidavit and paragraph 5 of Defendant's affidavit; and moot as to paragraph 10 of Defendant's affidavit.

B.    *Motion for Summary Judgment as to Nondischargeability of Debt*

    1.    <u>"Willful and Malicious Injury" Under § 523(a)(6)</u>

Section 523(a)(6) provides that any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is excepted from discharge.

MEMORANDUM OF DECISION − 8

Plaintiffs argue their debt meets the requirements of § 523(a)(6) because it is a judgment that was awarded to them after a jury found Defendant injured them by committing the intentional tort of abuse of process.  Plaintiffs' Mem. at 3, Dkt. No. 7–4.  To Plaintiffs, the issues of willfulness and maliciousness have already been adjudicated in the state court abuse of process action, and further litigation of these issues should be precluded in this dischargeability action.

The creditor carries the burden of proving by a preponderance of the evidence that a debt should be excepted from discharge pursuant to § 523(a)(6).  *See Molina v. Seror (In re Molina)*, 228 B.R. 248, 251 (9th Cir. BAP 1998) (citing *Grogan v. Garner*, 498 U.S. 279 (1991)).  Plaintiff creditors must show both that the defendant's conduct in inflicting injury on plaintiffs was willful, and separately, that the defendant's actions inflicting the injury were malicious.  *Torres v. Nicholas (In re Nicholas)*, 556 B.R. 465, 472–73 (Bankr. D. Idaho 2016) (citing *Masuo v. Galan (In re Galan)*, 12.1 IBCR 5, 7 (Bankr. D. Idaho 2012)).

The willfulness requirement is met "only when the debtor has the subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct*." Ormsby v. First Am. Title Co. of Nevada (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010) (quoting *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002)).  Courts may consider circumstantial evidence that tends to show what the debtor must have actually known when taking the injury-producing action. *Carrillo*, 290 F.3d at 1146 n.6.

MEMORANDUM OF DECISION − 9

As to whether a debtor's actions are malicious, "a malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Id.* at 1207 (quoting *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001)).  The wrongful act must be committed intentionally, rather than the injury itself.  *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997).  Malice may be inferred based on the nature of the wrongful act where willfulness has already been established.  *Ormsby*, 591 F.3d at 1206 (citing *Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 554 (9th Cir. 1991)). A showing of biblical malice, i.e. personal hatred, spite or ill-will is not required. *Murray*, 131 F.3d at 791 (citing *In re Cecchini*, 780 F.2d 1440, 1442–43 (9th Cir. 1986)).

Here, the question before the Court is whether the state court abuse of process judgment established the existence of willful and malicious injury within the meaning of § 523(a)(6) such that further litigation of this issue is precluded in this dischargeability proceeding.

2.    Issue Preclusion

Issue preclusion, or collateral estoppel, prevents parties from relitigating factual issues that have been determined in prior litigation. *Resolution Tr. Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999).  Issue preclusion relieves parties of the cost of multiple lawsuits, conserves judicial resources, and helps avoid inconsistent decisions, encouraging reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90 (1980).  Issue

MEMORANDUM OF DECISION − 10

preclusion applies in bankruptcy discharge exception proceedings under § 523(a).

*Grogan*, 498 U.S. at 284 n.11.

As a matter of full faith and credit, 28 U.S.C. § 1738 requires federal courts to apply the pertinent state's issue preclusion laws to determine whether relitigation of an issue is precluded in a subsequent federal action. The party asserting issue preclusion bears the burden of proving its applicability under state law. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). The party must also provide "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff.'d*, 100 F.3d 110 (9th Cir. 1996). Any reasonable doubts as to what was decided by a prior judgment should be resolved against a finding of issue preclusion. *Id.*

For issue preclusion to apply under Idaho law, five elements must be established. *Rodriguez v. Dep't of Corr.*, 29 P.3d 401, 404 (2001). The party asserting issue preclusion must show that:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier, case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation, and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation. *Id.*

Accordingly, this Court must consider these five elements to determine if issue preclusion is appropriate in this § 523(a)(6) dischargeability proceeding.

MEMORANDUM OF DECISION − 11

3.    Discussion

Plaintiffs contend the issue of Defendant's willful and malicious conduct was

heard and finally decided by the state court, and should be given preclusive effect here.

In determining whether Plaintiffs are correct, the Court will consider each state law

factor.

a.    Full and Fair Opportunity to Litigate the Issue

The Court must first consider whether Defendant had a full and fair opportunity to

litigate the issues in state court.  The Court concludes that he did.  In *Bach v. Bagley*, the

Idaho Supreme Court held that a "party [has] had a full and fair opportunity to litigate

where an argument could have been made in a prior proceeding."  229 P.3d 1146, 1157

(2010).

Here, Defendant's opportunity to litigate his case far exceeds this minimal

standard.  Defendant appeared in the state court action, was represented by counsel, and

contested Plaintiffs' counterclaim in an answer.  Defendant litigated the issue of abuse of

process claim during summary judgment proceedings that included reply briefs and oral

arguments.  Defendant's counsel tried the issue of abuse of process to a jury during a

three-day trial held in September 2017.  At the conclusion of trial, Defendant filed a

motion for judgment notwithstanding the verdict and a motion for a new trial on the issue

of abuse of process, both of which were denied.  Based on Idaho precedent, the Court

concludes that Defendant had a full and fair opportunity to litigate the issue of abuse of

process in state court.  Accordingly, this factor has been met.

MEMORANDUM OF DECISION − 12

### b.    Identity of Issues

Since federal bankruptcy law defines what "willful and malicious injury" means under § 523(a)(6), the Court must determine if the issues litigated in state court are identical to those presented in this adversary proceeding.  To do so, the Court must consider whether the elements of the cause of action of abuse of process relied upon by the state court as the basis for its judgment are the same as those this Court must apply in this discharge litigation.  To prevail on this element, Plaintiffs must show that the substantive elements of the state court abuse of process judgment are sufficient to establish that Defendant inflicted a "willful and malicious injury" for the purposes of § 523(a)(6).

### i.    Willfulness

First, the Court must examine whether the state court judgment for abuse of process establishes that Defendant's conduct was "willful" under § 523(a)(6).  Pursuant to Jury Instruction No. 11, the state court jury found that the Defendant "committed a willful act in the use of legal process not proper in the regular course of the proceedings." Manweiler Aff, Dkt, No.7–2 at ¶ 9–10.

The United States Bankruptcy Appellate Panel of the Ninth Circuit, in *In re Black*, previously determined that "willfulness" for the purposes of an abuse of process claim can be consistent with "willfulness" under § 523(a)(6).[4]  In *Black*, the evidentiary record

---

[4] In *In re Black*, the 9th Circuit BAP considered the elements of abuse of process under Nevada state law. The elements included "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and

MEMORANDUM OF DECISION − 13

showed that the debtors intended to abuse process to accomplish their ulterior purpose of attempting to negotiate a lower purchase price in a real estate transaction. *Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 212 (9th Cir. BAP 2013).

Here, the record fails to show that Defendant subjectively intended to cause injury to Plaintiffs in his abuse of process. However, for the purposes of establishing willfulness, Defendant is also charged with what he must have known when taking the injury-producing action.

Even though the record does not show that Defendant's subjective intent was to cause injury to Plaintiffs, Defendant must have known that his abuse of process would do so. The evidence shows that the jury awarded Plaintiffs $150,000 in general damages for abuse of process to reimburse them for renovation costs incurred before they later sold their home. The record suggests that Defendant's motive was, in part, to vigorously enforce the CC&R's in the Colony Subdivision where both parties lived. However, the state court jury found that Defendant's abuse of process was "willful" and that the Defendant used process "as a threat or club." Based on these findings, this Court may infer that Defendant must have known his overzealous efforts at the enforcement of the CC&R's would cause injury to Plaintiffs. The state jury findings related to Defendant's

---

(2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 212 (9th Cir. BAP 2013).

MEMORANDUM OF DECISION − 14

abuse of process are sufficient to establish that Defendant's conduct was willful under § 523(a)(6).

### ii.    Maliciousness

Next, the Court must consider whether the state court judgment for abuse of process also establishes that Defendant's conduct was "malicious" under § 523(a)(6). The Ninth Circuit defines a "malicious" act as one that is (1) wrongful, (2) done intentionally, (3) necessarily causing injury, (4) without just cause or excuse. *Ormsby*, 591 F.3d at 1207. An act necessarily causes injury in this context if it is "targeted at the creditor, at least in the sense that the conduct is certain or almost certain to cause financial harm." *Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (1991).

Here, the state court jury found that the Defendant had "an ulterior, improper purpose" in his use of legal process that was "not proper in the regular course of the proceeding." Manweiler Aff, Dkt, No.7–2 at ¶ 9–10. The jury's finding of an improper purpose in the abuse of process claim is sufficient to demonstrate that Defendant committed a wrongful act, satisfying the first element of the malice standard in § 523(a)(6) cases. The jury also found that Defendant's act was done "willfully," which establishes that Defendant's wrongful acts were done intentionally, satisfying the second element. Further, the jury's finding that Defendant acted with an improper purpose establishes that he acted without just cause or excuse, satisfying the fourth element.

MEMORANDUM OF DECISION − 15

However, Plaintiffs' claim fails on the third element because the record fails to show that Defendant's actions necessarily caused injury.  While it is true that the state court found that Defendant's actions did in fact cause injury, resulting in $150,000 in general damages, the record does not conclusively establish whether Defendant's abuse of process must have necessarily caused injury to Plaintiffs.

Within the Ninth Circuit, parties have prevailed on the element of malice in dischargeability actions where they have pointed to specific facts in the record that show a plaintiff was necessarily injured by a debtor's conduct because the likelihood of financial harm was "certain or almost certain." *Transamerica*, 942 F.2d at 555. Often times, as discussed below, this finding of likelihood of financial harm is accompanied by other findings in the record that clearly demonstrate malice.

For example, in *Ormsby*, the court found that a debtor's wrongful conversion of another's title plants necessarily caused financial injury by depriving the rightful owner of the value of the plants.  591 F.3d at 1207.  In holding that the "malicious" prong was met, the *Ormsby* court also pointed to the fact that the grant of attorney fees in the case was based on a prerequisite finding that the misappropriation of the title plants was "willful and malicious."  *Id.*

In another Ninth Circuit case, the court found that the debtor's conduct necessarily caused a financial injury where the debtor chose to wrongfully withhold wages due an employee.  *Jercich*, 238 F.3d at 1209.  The bankruptcy court's finding of malice was further buttressed by state court findings of "substantial oppression" resulting from

MEMORANDUM OF DECISION − 16

"despicable conduct" that subjected the plaintiff to "cruel and unjust hardship in conscious disregard of that person's rights."  *Id.*

In a third case, the Ninth Circuit Bankruptcy Appellate Panel found that the misappropriation of trade secrets necessarily caused financial injury to the victim of the misappropriation.  *Lopez v. Emergency Serv. Restoration Inc. (In re Lopez)*, 367 B.R. 99, 106–07 (9th Cir. BAP 2007), *aff.d*, 378 Fed.App'x 610 (9th Cir. 2010). In support of its finding of malice, the court also pointed to a written statement of decision that expressly found the debtor's conduct to be "willful and malicious."  *Id.* at 105.  Furthermore, the court noted that "willful and malicious" conduct was prerequisite to the court's attorney fee award in the case. *Id.* at 106.

In each of the above cases, the conduct of the defendant was certain or almost certain to cause a financial injury to the plaintiff.[5]  Furthermore, in each case, the bankruptcy court was either able to make its own independent findings of malice on the record or was able to rely on clear state court findings on the issue of malice.

---

[5] *See also Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1106 (9th Cir. 2005) ("[Defendant's] statements were directed at [Plaintiff's] professional reputation and, therefore, will necessarily harm him in his occupation."), *Nautilus, Inc. v. Yu (In re Yu)*, 545 B.R. 633, 645 (Bankr. C.D. Cal. 2016), *aff'd*, 694 F.App'x 542 (9th Cir. 2017) (holding that because Defendant knew she was selling counterfeit equipment at a discount price, she must also have known Plaintiff's injury was substantially likely to occur), *Tomkow v. Barton (In re Tomkow)*, 563 B.R. 716, 729 (9th Cir. BAP 2017) (finding malice in a case of conversion where "malice was established through specific findings at both the trial court and appellate court level."), *Papadakis v. Zelis (In re Zelis)*, 66 F.3d 205 (9th Cir. 1995) (explaining that, in a sanctions case, the filing of frivolous appeals necessarily caused injury in the form of increased litigation costs where trial court had made specific findings regarding malice).

MEMORANDUM OF DECISION − 17

Here, by comparison, the necessity of injury is less clear. The jury awarded $150,000, presumably to compensate Plaintiffs for renovations made to their home prior to its sale.  The record does not show what their injury necessarily would have been if they had not renovated their home.  There is no doubt that the state court found that Plaintiffs were in fact injured by Defendant's wrongful acts, but the record does not show that Plaintiffs necessarily had to have been injured by Defendant's abuse of process. Since it is unclear whether Defendant's abuse of process necessarily caused injury to Plaintiffs, malice is not established and Plaintiffs are not entitled to judgment as a matter of law.

As discussed above, the party asserting issue preclusion bears the burden of proving its applicability under state law.  Here, the Plaintiffs have failed to demonstrate that the state court's findings in the abuse of process action are sufficiently identical to the findings necessary to establish "maliciousness" for the purposes of a § 523(a)(6) nondischargeability action.  This Court must resolve any reasonable doubts as to what was decided by a prior judgment against a finding of issue preclusion.  The record before the Court at summary judgment does not definitively show sufficient identity of legal issues between the state court case and this adversary proceeding, and this element of issue preclusion is not met.

> ### c.     Issue was Actually Decided

This element of issue preclusion is met.  The record is clear that, after a jury trial, the state court entered judgment on the issue of abuse of process on September 20, 2017.

MEMORANDUM OF DECISION – 18

d.    A Final Judgment on the Merits was Entered

This element is also met because the state court granted a judgment on the basis of abuse of process and entered a money judgment against Defendant in favor of Plaintiff on October 31, 2017.  Defendant did not appeal this final judgment.

e.    Identity of the Parties

The parties in the prior state court case are the same as those in this action.

4.  "Unclean Hands" Defense

Defendant raises the doctrine of "unclean hands" as a defense in this adversary proceeding.  A plaintiff seeking equitable relief in bankruptcy court "must come with clean hands." *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944).  This means that a plaintiff must "have acted fairly and without fraud or deceit as to the controversy in issue." *Ellenburg v. Brockway, Inc.*, 763 F.3d 1091, 1097 (9th Cir. 1985).  To determine whether unclean hands will preclude a plaintiff from obtaining relief, courts must weigh the substance of the right asserted by the plaintiff against the alleged transgression that would foreclose that right.  *Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 350 (9th Cir. 1963).

Here, Defendant cites numerous instances of alleged Plaintiff misconduct that Defendant argues should preclude Plaintiff from relief in this adversary proceeding. Most of Defendant's allegations of misconduct concern Plaintiffs' actions taken during 2016 and 2017, prior to the filing of Debtor's petition for Chapter 7 bankruptcy on February 14, 2018 and prior to the commencement of this adversary proceeding on

MEMORANDUM OF DECISION − 19

March 1, 2018.  Since the unclean hands defense requires a showing of Plaintiff

misconduct related to the current legal proceeding, Defendant's allegations of Plaintiffs'

misconduct prior to the commencement of Defendant's Chapter 7 filing do not show that

Plaintiff comes to this Court with unclean hands.

Defendant further argues that Plaintiffs have unclean hands because of statements

made, and evidence offered, in this adversary proceeding.  However, the substance of

those allegations is best characterized as a residual dispute over the facts of the state court

case rather than a meritorious allegation of fraud or deceit related to the current action.

The Court finds that Plaintiffs' right to seek an order of nondischargeability under

§ 523(a)(6) outweighs the significance of the alleged transgressions by Plaintiffs in this

adversary proceeding.  The defense of unclean hands does not preclude Plaintiffs from

seeking relief in this Court.

### *Conclusion*

Section 523(a)(6) excepts from discharge debts that arise from "willful and

malicious injury by the debtor to another entity. . . ."  Based on the evidence of record,

Plaintiffs were unable to establish that Defendant's conduct was malicious. Since

Plaintiffs were unable to carry their burden by showing that they are entitled to judgment

MEMORANDUM OF DECISION − 20

as a matter of law, Plaintiffs' motion for summary judgment is denied. A separate order

will be entered.



DATED:  June 19, 2018

_____
JOSEPH M. MEIER
U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION − 21